UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-06-335 |
| | § | CIVIL ACTION NO. H-09-1351 |
| MICHAEL ORJI-NWOSU, | § | |
| | § | |
| Defendant-Petitioner. | § | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND RECOMMENDATION THAT ALL RELIEF BE DENIED ON PETITIONER' S
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

This matter was referred to the undersigned Magistrate Judge to conduct an evidentiary

hearing on Petitioner Michael Orji-Nwosu' s claim(s) that his attorneys failed to communicate a

plea offer to him and/or were otherwise ineffective in advising him to not plead guilty.   An

evidentiary hearing was commenced on November 15, 2010,  reconvened on December 9, 2010,

and concluded on January 20, 2011.   Based on the evidence presented at the evidentiary hearing,

the Magistrate Judge concludes, based on the proposed findings of fact and conclusions of law that

follow, that there is no merit to Petitioner' s claim(s) that his attorneys failed to communicate a

plea offer to him and/or were otherwise ineffective in advising him to not plead guilty.   As for

the remaining claims raised by Petitioner in his § 2255 Motion to Vacate, Set Aside or Correct

Sentence and his Supplement thereto, the Magistrate Judge RECOMMENDS that the

Government' s Motion to Dismiss (Document No. 96) be GRANTED, that Petitioner' s § 2255

Motion to Vacate, Set Aside or Correct Sentence and Supplemental § 2255 Motion (Document

Nos. 87 & 95) be DENIED, and that this § 2255 proceeding be DISMISSED in its entirety WITH PREJUDICE.


## I.      Procedural History

Movant Michael Orji-Nwosu (" Orji"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Orji' s first motion pursuant to § 2255.

On August 27, 2006, Orji was arrested at Houston Intercontinental Airport. He was then charged by Complaint with possession with intent to distribute five kilograms or more of cocaine. (Document No. 1). On August 28, 2006, Orji made his Initial Appearance, at which he advised that he would retain counsel. (Document No. 2). On September 5, 2006, a detention hearing was held, at which Orji was represented by John B. Carroll of the law firm of Carroll and Becker. (Document No. 5). Orji was detained. (Document No. 6).

On September 20, 2006, Orji was charged by Indictment with possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii) (Document No. 7). On September 28, 2006, Orji appeared for an Arraignment and pleaded not guilty. (Document No. 12). Don Becker, of the law firm of Carroll and Becker, and Uche Mgbaraho appeared as attorneys for Orji. (Document No. 12). On November 13, 2006, the trial commenced. Don Becker and Uche Mgbaraho represented Orji at trial. Following two days of evidence, and three jury notes, in each

of which the jury asked to be provided with testimony from the trial, Orji was found guilty. (Document Nos. 38, 39, 42, 43, 45, 46 & 49).

On December 27, 2006, upon Orji's motion, Steven Jay Rozan was substituted as attorney of record for Orji. (Document No. 57). Thereafter, following the preparation of a presentence investigation report, to which Orji filed objections (Document No. 64), Orji was sentenced to 168 months imprisonment, to be followed by a five year term of supervised release. (Document No. 68). Orji appealed his conviction to the Fifth Circuit Court of Appeals. On December 15, 2008, the Fifth Circuit affirmed his conviction in a published opinion. *United States v. Orji-Nwosu*, 549 F.3d 1005 (2008). Within one year thereafter, Orji filed his § 2255 Motion to Vacate, Set Aside or Correct Sentence and Memorandum in Support (Document Nos. 87 & 88). He also filed, on October 15, 2009, a "Supplemental Submission to Motion to Vacate" (Document No. 95), in which he added another claim to this § 2255 proceeding. The Government, in response, filed a Response and a Motion to Dismiss (Document Nos. 96 & 97). In that filing, the Government acknowledged that an evidentiary hearing was needed on one of Orji's claims. (Document No. 96 at 28). Orji was thereafter appointed counsel and an evidentiary hearing was held on November 15, 2010, continued on December 9, 2010, and concluded on January 20, 2011. This § 2255 proceeding is now ripe for ruling.

## II.    Factual Background

The factual background, as set forth by the Fifth Circuit Court of Appeals in its decision affirming Orji's conviction, is as follows:

On August 27, 2006, Orji was arrested by an officer with the United States Customs and Border Protection Service at Houston's Bush Intercontinental Airport. Inside two pieces of Orji's luggage marked "heavy," officers discovered four sealed canisters of a protein supplement, each of which contained cocaine underneath a layer of milkshake powder. The four canisters held a total net weight of 17.94 kilograms – almost forty pounds – of cocaine.

Orji is an attorney who had a civil law practice in Philadelphia, Pennsylvania, and Houston, Texas, and was scheduled to travel from Houston to Nigeria via London, England. At trial, the government submitted evidence that Houston is a source-city for international cocaine trafficking, that Orji had traveled on seven recent occasions from Philadelphia to Houston to London, where he stayed for two or three days, then to Nigeria and then back to Philadelphia. Those trips occurred in April, June, August, and November of 2005, and February, April, and July of 2006. On more than half of the trips, Orji traveled to London with additional luggage that he had not carried from Philadelphia.

The government also presented evidence that on the date in question, Orji was asked security screening questions about his knowledge of the contents of his luggage. He gave standard answers to those questions and did not state that he was transporting items for another person. After discovery of the cocaine, law enforcement personnel at the airport conducted a re-screening of all passengers on Orji's flight, including Orji. He was specifically asked if all items of his luggage belonged to him, and he said that they did. He was asked if he packed everything in his luggage, and he said that he did. Again, Orji did not contend that he was transporting sealed containers for another person. Additionally, government witnesses testified that: (1) the canisters were significantly heavier than the six pound weight indicated on the packaging; (2) Orji expressed no emotion upon his arrest; and (3) the street value of the cocaine seized from Orji would be millions of dollars.

In his defense, Orji called a number of witnesses who indicated that it was common within the Nigerian community to transport items for friends and family members. Orji himself testified that he had ongoing business ties to Houston and Nigeria, and that he was carrying the canisters as a favor for an acquaintance named Samuel Oguguo, whom he had known for twelve years. Orji stated that on August 25, 2006, he encountered Oguguo outside a barbershop, and he was asked to deliver items of clothing and a "protein substance" to Oguguo's brother in Nigeria. Oguguo was driving a new car.

Orji further testified that on the day before his flight to London, Oguguo brought two suitcases – one large and one small – to Orji's hotel room. The suitcases contained four canisters of protein powder, which were wrapped in a

4

black bag, and other items, such as cotton balls and clothing.  Because Orji intended to carry computers to Nigeria and recognized that the larger suitcase was too big to be accepted by the airlines, he refused to transport both pieces of luggage.  Oguguo, who purportedly travels to Nigeria often because his wife lives there, appeared to be " really desperate," and explained that the heavy canisters were intended for his brother' s medical clinic in Lagos.  Orji inquired further about the canisters, shook them, and read the label.  Oguguo told Orji that the powder was for use in bodybuilding.  Finally, Orji agreed to take the canisters. He placed two canisters in his own suitcase and also carried two in Oguguo' s smaller suitcase.  Orji indicated that Oguguo was " a little hesitant" to allow Orji to carry the canisters all the way to Nigeria.  Instead, Oguguo offered to have a cousin pick up the items in London.

Based on the evidence elicited at trial, and over Orji' s objection, the district court included a " deliberate ignorance" jury instruction, adopted from Fifth Circuit Pattern Jury Instruction 1.37.  The instruction stated,

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Orji was convicted of the single count of the indictment, and was sentenced to 168 months of imprisonment.

*United States v. Orji-Nwosu*, 549 F.3d at 1007-08.  In addition, in addressing Orji' s claim on appeal that the District Court erred in submitting a deliberate ignorance instruction, the Fifth Circuit further expounded, as follows, upon the evidence presented at trial:

> The evidence established that Orji was subjectively aware of a high probability of illegal conduct.  According to Orji' s testimony, Oguguo, an acquaintance who traveled frequently to Nigeria, approached Orji.  Oguguo requested that Orji transport two heavy suitcases, including one that was so large that Orji believed it would not be accepted by the airline.  Inside these suitcases, the items that Oguguo was " really desperate" to have transported were four canisters, wrapped in a black bag, purportedly containing protein powder.  These containers, holding almost forty pounds of cocaine and additional protein powder, were clearly labeled as holding only six pounds each, and Orji claimed to have

5

been puzzled enough to shake the notably heavy canisters.  As a licensed attorney aware of heightened security on flights to London in 2006, Orji would be cognizant of a high probability of the existence of illegal conduct when his friend brought two suitcases containing heavy containers covered in plastic bags.

Further, Orji's trial testimony documents a purported contrivance to avoid learning of the illegal conduct.  By his own testimony, Orji apparently accepted at face value Oguguo's curious claim that the four canisters of protein powder would be used for bodybuilding purposes at a medical clinic.  Despite Oguguo's desperation to have the containers transported, Orji did not further investigate when Oguguo was "hesitant" to have him transport the items from London to Nigeria.  Since the rationale for having Orji transport the items to Nigeria was to avoid theft by Nigerian courier services, it would make little sense to carry the items only as far as London.  Orji's statements about his luggage to two different people at the airport are inconsistent with his trial testimony.  Assuming arguendo that Orji's trial testimony about the canisters was true, the airport statements show a purposeful attempt to avoid discovery of what was in the canisters Oguguo gave him.  The jury could reasonably infer that an experienced traveler such as Orji would know that if he said that the luggage contained items unknown to him, the items would be thoroughly searched.

Orji's testimony that he failed to further inspect the canisters and question Oguguo's conduct, coupled with his answers to officials at the airport (which were inconsistent with his trial testimony), suggest a conscious attempt to avoid incriminating knowledge, not mere negligence.  Thus, the district court could have reasonably concluded that the evidence at trial satisfied the second prong of the "deliberate ignorance" test.

In any case, this court has explained that "'an error in giving the deliberate ignorance is harmless where there is substantial evidence of actual knowledge.'" *Mendoza-Medina*, 346 F.3d at 134 (quoting *United States v. Saucedo-Munoz*, 307 F.3d 344, 349 n.5 (5th Cir. 2002)).  Here, the government submitted evidence that Orji, a licensed attorney, made eight costly trips from Philadelphia, via Houston and London, to Nigeria, within sixteen months.  During most of those trips, Orji picked up additional luggage before traveling to London, and he usually remained in Nigeria for only a few days.  Orji showed no emotion when arrested, and he claimed to the British Airways representative that he had packed his own luggage.  During the re-screening, he again stated that all items in his luggage belonged to him.

If Orji's answers to the airport questions were truthful, then the cocaine canisters were packed by him and belonged to him.  If he was merely an "unwitting dupe," as he now claims, then his repeated failure in response to the

airport questions to admit his supposed role as an innocent delivery service is highly suspect. Finally, the jury could have easily concluded that Oguguo, alleged to be a casual acquaintance who makes frequent trips to Nigeria himself, would not be willing to entrust millions of dollars worth of cocaine to an unknowing accomplice. In sum, the evidence of Orji's actual knowledge of the cocaine was substantial enough to render harmless any error in giving the "deliberate ignorance" instruction.

*Id.* at 1009-1010.

## III.    Claims

Orji asserts eight claims in this § 2255 proceeding:

1.    that his trial counsel was ineffective for "failing to interview the witness petitioner advised him was available to testify in his defense at trial";

2.    that his counsel was ineffective for "failing to poll the jury even when the court invited him to do so";

3.    that the "prosecutor's comments in his closing argument constituted misconduct in violation of due process and counsel was ineffective in failing to object";

4.    that counsel was ineffective in "erroneously advising Petitioner about the import of the safety valve application";

5.    that counsel was ineffective "in advising against a guilty plea" and in failing to communicate a five year plea offer;

6.    that counsel was ineffective for "failing to argue against the charges in the indictment";

7.    that counsel was ineffective for failing to have the defense witnesses sequestered; and

8.    that counsel was ineffective for failing to exclude or object to evidence of his prior trips to London, England.

As set forth above, an evidentiary hearing was held on Orji's claim that his trial counsel was ineffective for failing to communicate a plea offer to him and for advising him not to plead guilty. The remainder of Orji's claims were left to be decided upon the record.

## IV.     Discussion – Plea Offer Claim

As set forth above, an evidentiary hearing was held on Orji's claim, encompassed in claim 5 above, that his trial counsel was ineffective for failing to communicate a plea offer to him and for improvidently advising him not to plead guilty.  Orji alleged as follows with respect to this claim:

> The government offered Petitioner 5 years were he to plead guilty and forego a trial in this case.  None of the lawyers Petitioner had pre-trial told him about this plea offer.  Mr. Becker only said in passing that the reason he had not been fully prepared for trial was that he thought the case would end in a guilty plea.  He never said the basis for his belief, never told Petitioner about the five-year plea offer.  Petitioner first became aware of the plea from Mr. Stephen Jay Cozan [sic], when it had been a bit too late, after the trial had already taken place and he was preparing for sentencing.  But even then, Mr. Becker advised against taken [sic] a plea in the case.
>
> It is Petitioner's position that had he been properly advised, he would have taken the plea for five years.  Indeed, had counsel properly explained everything to Petitioner, he was also amenable for an open plea as long as he could have received points reductions for acceptance of responsibility and under the safety valve provision.  As an objective reason to proof [sic] that Petitioner, given a good advise [sic] would have taken a plea, Petitioner would quickly point out that he had always had the mindset of resolving this matter amicably with the government to the point that he even agreed to be debriefed for the safety valve and also for any possible Rule 35(b) motion that could be filed by the government.  It is true that Petitioner did profess innocence in his case, but it has always been known that a defendant who professes his innocence does not necessarily foreclose the possibility of eventually, given a good legal advice, take a plea and even sometimes cooperate with the government.

8

Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Conviction and Sentence (Document No. 88) at 11-12.

Having considered Orji's allegations and based on the evidence presented at the evidentiary hearing, the undersigned makes the following proposed findings of fact and conclusions of law:

**A.      Proposed Findings of Fact**

1.      Orji was born in Nigeria, but became a naturalized United States citizen in 1996.

2.      Orji obtained a Bachelor of Arts from the University of Texas at Arlington, and a law degree from Texas Southern University.   At the time of his arrest, Orji was a licensed, practicing attorney, with a civil law practice in both Houston, Texas, and Philadelphia, Pennsylvania.

3.      Orji testified at the evidentiary hearing that he consistently and repeatedly urged his counsel, Don Becker, to seek a plea agreement. Orji also testified that had Becker communicated a plea offer to him, he would have been willing to admit his guilt.   Orji, however, refused to state, in response to questions on cross-examination, that he would have been willing to plead guilty if he was subject to the mandatory minimum sentence of ten years.

4.      Orji offered as evidence Exhibits 1 and 2, letters he purportedly sent to Don Becker on September 29, 2006, and November 3, 2006, respectively, urging Becker to seek a plea agreement.   Exhibit 1 appears to be an original, bearing original ink and original folds in the paper.

5.      The authenticity of both letters, Exhibits 1 and 2 is highly suspect.   Upon the undersigned's inquiry at the evidentiary hearing as to where the letters had come from, and whether the exhibits were originals or copies, Orji appeared flustered, and responded in a somewhat confusing fashion that he had obtained the letters from his wife, and that it was she who had provided them to David Adler, the first attorney who had been appointed to represent him in this case.   No evidence was presented from either Orji's wife or David Adler to corroborate the authenticity of the letters.   In addition, the second letter, which bears a date of November 3, 2006, was purportedly written by Orji after the final pretrial conference that was held on that same

date, at which Becker announced ready for trial.  The contents of the November 3, 2006, letter are wholly inconsistent with counsel's announcement that the defense was ready for trial, Orji's claim in this proceeding that he expected to reach a plea agreement with the Government, and the fact that the case went to trial at the first trial setting.

6.  Orji's brother, Prince Nwosu, testified that he had three telephone conversations with Don Becker.  In the first, which took place around the time of the detention hearing in September 2006, he told Becker that Orji wanted to "work with the Government."  In the second conversation, which took place just prior to the trial in November 2006, he told Becker that Orji wanted to plead guilty.  Prince Nwosu testified that Becker, in response, told him that the Government had a weak case.  In the third conversation, which took place after Orji was found guilty, Prince Nwosu inquired of Becker why there had been a trial, and why Orji had not pleaded guilty.

7.  The testimony of Prince Nwosu is not credible.  Prince Nwosu was not present at trial or any other court appearances made by Orji prior to the evidentiary hearing held on November 15, 2010.  He admitted on cross examination that Orji had never admitted or denied committing the offense. He also admitted that he was unaware that Orji had testified at trial that he had not committed the offense.  Prince Nwosu, as Orji's brother and close family member, had a motivation to fabricate Orji's desire to plead guilty.

8.  Don Becker testified at the evidentiary hearing that he was hired by Orji to assist Uche Mgbaraho at trial.  He did not recall having any conversations with Orji about the existence of any plea offer.  He did recall that Orji never indicated or suggested that he was guilty; in fact, Orji insisted that he was innocent and offered explanations for the cocaine found in his luggage.  Based on Orji's adamant protestations of innocence, Becker would not have advised Orji to plead guilty. That testimony is credible, particularly in light of the corroborating testimony of Claude Hippard and Ted Imperato.

9.  Claude Hippard and Ted Imperato, both of whom are Assistant United States Attorneys, and both of whom were assigned to Orji's case, testified that they were consistently informed that Orji was adamant in his protestations of innocence, and his insistence on going to trial.  As such, no plea offer was ever made.  The testimony of Claude Hippard and Ted Imperato, who have no motivation to prevaricate and who had every interest in obtaining a plea agreement if Orji had been amenable, was wholly credible.

10

10.     The Government made no plea offer.

11.     From his view of the evidence, Becker believed the case was "triable"; that is, that the evidence against Orji was not overwhelming.  Based on Orji's protestations of innocence, and his review of the evidence, Becker concluded that Orji would have to testify in his own defense.  Orji did not disagree with that strategy.

12.     Orji maintained his innocence at trial.  He testified that he was given the canisters containing the cocaine by Samuel Oguguo, and that he had no idea the canisters contained cocaine.  Orji's claim in this § 2255 proceeding that he had urged Becker to obtain a plea agreement is wholly inconsistent with Orji's testimony at trial, and his protestations of innocence.

13.     Orji's testimony that he consistently and repeatedly urged Becker to obtain a plea agreement is not credible.  At this stage, having been found guilty and sentenced to 168 months imprisonment, Orji has a strong motivation to fabricate his desire for a plea agreement.   Orji never admitted his guilt to anyone and never advised Becker that he was willing to serve the ten year mandatory maximum on the offense.  In addition, Exhibits 1 and 2 do not appear to be authentic, and Orji offered no evidence that such letters were sent to, and received by, Becker.

14.     Don Becker's case file, which was subpoenaed for the evidentiary hearing, was not produced.  The file has been inadvertently lost or destroyed.

15.     Uche Mgbaraho did not testify at the evidentiary hearing.   It was represented to the Court that he was in Nigeria, and unavailable.

**B.     Proposed Conclusions of Law**

1.      In a § 2255 proceeding, the movant has the burden to prove his claims by a preponderance of the evidence. *Johnson v. Zerbst*, 304 U.S. 458, 468-9 (1938).

2.      Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To be entitled to relief on an ineffective assistance of counsel claim, a

11

petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to " show that there is a reasonable probability that, but for counsel' s unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

3.  " In determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice." *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). " [F]ailing to inform the defendant of a plea offer could amount to ineffective assistance of counsel." *Id.* at 1171.

4.  Orji has not met his burden of proving, by a preponderance of the evidence, that a plea offer was made by the Government. In fact, the uncontroverted evidence is that there was no plea offer. As result, Orji has not met his burden of proving, by a preponderance of the evidence, that counsel was ineffective for failing to communicate a plea offer to him.

5.  " [O]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965).

6.  A defense attorney must " substantially assist his client in deciding whether to plead guilty," *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974), and must provide the defendant with an " ' understanding of the law in relation to the facts.' " *Id.* (quoting *Walker v. Caldwell*, 476 F.2d 213, 218 (5th Cir. 1973). Although an attorney' s advice need not be perfect, " it must be reasonably competent" and must allow the defendant " to make an informed and conscious choice." *Herring*, 491 F.2d at 128.

5.  Orji has not met his burden of proving, by a preponderance of the evidence, that counsel' s performance and his advice to Orji as to the advisability of pleading guilty or going to trial was objectively unreasonable. Counsel' s advice was, given Orji' s adamant protestations of innocence, and the fact that Orji was a licensed attorney, reasonably competent.

12

V.    **Discussion - Remaining Claims**

A.    **Ineffective Assistance of Counsel Claims**

In Orji's remaining claims, he primarily contends that his trial counsel, Don Becker, was ineffective.  In particular, he alleges that counsel was ineffective for: (1) failing to investigate, interview and call Samuel Oguguo to testify on Orji's behalf at trial; (2) failing to poll the jury; (3) erroneously advising Orji about the safety valve provision in the sentencing guidelines; (4) failing to challenge the charge alleged in the Indictment as not consistent with the evidence presented; (5) failing to have the defense witnesses sequestered; and (6) failing to seek to exclude, or object to, the Rule 403 evidence of Orji's prior trips to London  Based on the uncontroverted facts and evidence in the record, none of these ineffectiveness claims warrant Orji any relief in this § 2255 proceeding.

1.    **Uncalled Witnesses**

In his first claim Orji first maintains that counsel was ineffective for failing to investigate, interview and call Samuel Oguguo to testify at trial.  According to Orji,

> [c]ounsel can offer no strategic justification for his failure to make any effort to investigate the case, and indeed he could have offered no such rationale, as he was well aware of the existence of Mr. Ogugua but still allowed the jury, the prosecutor and the courts to harbor doubts about the mere existence of Mr. Ogugua who was available and willing to testify in Petitioner's behalf.

Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Conviction and Sentence (Document No. 88) at 4.[1]

---

[1] In his Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Conviction and Sentence (Document No. 88), Orji alternately uses the spelling "Oguguo" and

13

Complaints concerning uncalled witnesses are not favored in federal habeas corpus review because of the speculative nature of allegations of what a witness might have testified. *Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir.), *cert. denied*, 498 U.S. 990 (1990); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987). Where the only evidence of a missing witness' s testimony is provided by the habeas petitioner, federal courts view claims of ineffective assistance of counsel with great caution. *Id.* To demonstrate error, a petitioner must prove that a witness' s testimony would have helped him, and that the witness would have testified to certain facts or information at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Here, while Orji complains that his counsel was ineffective for failing to investigate, interview, and call Samuel Oguguo to testify at trial, Orji offers no evidence about Samuel Oguguo, his whereabouts, or his willingness to testify. All Orji offers are vague, conclusory and unsupported allegations regarding Oguguo. Because there is no evidence that counsel was given information about Mr. Oguguo' s whereabouts such that counsel could have contacted him, and no evidence that Mr. Oguguo would have testified on Orji' s behalf at trial, this ineffectiveness claim fails.

## 2. Jury Poll

In his next ineffectiveness claim, Orji complains that counsel failed to poll the jury, particularly in light of the Court' s inquiry as to whether counsel wanted to poll the jury.

" Absent some indication that the jury' s verdict was not unanimous," counsel will not be found deficient for failing to poll the jury. *United States v. Ambo*, 64 Fed. Appx. 416 at *3 (5th

---

" Ogugua".

14

Cir. 2003); *see also United States v. Costa*, 691 F.2d 1358, 1363-64 (11th Cir. 1982) (" Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel' s failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases.").

Here, while the jury made several requests for trial testimony during their deliberations (Document Nos. 42, 43 & 46), the jury also indicated in their final note that they had reached a unanimous verdict.  *See* Document No. 48.  Moreover, upon the District Court' s inquiry, the foreperson responded on the record that the jury' s verdict was unanimous.  *See* Trial Transcript, Volume 3 (Document No. 81) at 17.

Because there is nothing to indicate that the jury' s verdict was not unanimous, and because the record shows that it was, counsel was not deficient for failing to poll the jury. Accordingly, no relief is available to Orji on this ineffectiveness claim.

###   3.      Advice Regarding Safety Valve

Orji next contends that counsel was ineffective for erroneously advising him about the applicability of the safety valve provision.  According to Orji, counsel told him that he would be eligible for the safety valve provision regardless of whether he pled guilty or proceeded to trial. It was only at sentencing that Orji realized this advice was inaccurate and that he was not eligible for the safety valve provision under 18 U.S.C. § 3553(f).

The safety valve provision, set forth in 18 U.S.C. § 3553(f), provides as follows:

> Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C.  960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title

28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that –

(1)  the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2)  the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)  the offense did not result in death or serious bodily injury to any person;

(4)  the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

As acknowledged by the Government, Orji met all the requirements of the safety valve provision, *except one*: he had not, prior to sentencing, debriefed with the Government.  Orji seemingly blames this on counsel.

The record shows that Becker represented Orji at trial, but that Orji replaced Becker with Steven Ray Rozan on December 27, 2006, and that Rozan represented Orji at sentencing and on appeal.  The record also shows that Orji had not, through the date of sentencing, debriefed with the Government.

In the Presentence Investigation Report (" PSR"), Orji' s base offense level was calculated at 34 based on the amount of cocaine at issue.  With no criminal history points, and no

16

adjustments, Orji's guideline range was 151 to 188 months imprisonment.  No mention was made

in the PSR as to the availability of the safety valve adjustment.  In the Objections filed to the PSR

(sealed Document No. 64), counsel argued that "Defendant well-qualified for an adjustment under

U.S.S.G. § 5C1.2 ("Safety Valve") of a two (2) offense level reduction.  The Defendant will

have well-qualified prior to Sentencing (i.e., full disclosure as to his involvement) all five criteria

requirements such that Defendant's offense level should be an offense level of 32 yielding an

advisory Guideline range in Criminal History Category I of 121-151 months."  In an Addendum

filed in response to Orji's Objections to the PSR, the Probation Officer wrote:

> If, prior to sentencing, the defendant meets the criteria set forth in 18 U.S.C. §
> 3553(f)(1)-(5) and U.S.S.G. § 5C1.2, Limitation of Applicability of Statutory
> Minimum Sentencing in Certain Cases, comment. (N. 9) to this section states the
> Court shall impose a sentence in accordance with the applicable guidelines without
> regard to any statutory minimum sentence.  Further, the defendant would then
> become eligible for an additional two level reduction, pursuant to U.S.S.G. §
> 2D1.1(b)(6).  The resulting offense level would become 32 and the guideline
> imprisonment range would become 121 to 151 months, the supervised release
> range would be 3 to 5 years, and the fine range would remain $17,500 to
> $4,000,000.

(Sealed Document No. 66).

As of the date the PSR was prepared (January 31, 2007), Orji had not debriefed with the

Government and was not eligible for a safety valve adjustment.  As of the date of the Addendum

to the PSR, Orji still had not debriefed with the Government, but could still so debrief prior to

sentencing and become eligible for the safety valve adjustment.  At sentencing, however,

counsel's objection to the absence of a safety valve adjustment was withdrawn.  *See* Sentencing

Transcript (Document No. 78) at 3.

Upon this record, where Orji knew from the Addendum to the PSR that eligibility for the safety valve adjustment depended upon his truthful debriefing, and where Orji did not debrief with the Government prior to sentencing, it cannot be said that Orji was prejudiced by any advice he received from counsel about the applicability of the safety valve provision. Therefore, this ineffectiveness claim fails.

### 4.    Challenge to the Indictment

In his next claim, Orji maintains that his trial counsel was ineffective for failing to challenge the charges alleged in the indictment as not being consistent with the evidence. According to Orji,  he

> was charged with Possession with Intent to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(ii).  However, the facts and evidence at the trial was that Petitioner was indeed intending on exporting the cocaine in question to London, England.  As such, there was no such intent to distribute it in the United States.  So in essence Petitioner was merely guilty of possessing the cocaine but not with intent to distribute it here in the United States.  This simply means that Petitioner should have either been charged with exportation of the cocaine, in violation of Title 21 U.S.C. § 953, or simple possession under Title 21 U.S.C. § 844(a).

> Because Petitioner was not properly charged, counsel should have moved to dismiss the indictment or at the very least ask for [the] lesser included offense of simple possession which would have exposed Petitioner to only a sentence of not more than one year.  *See e.g.* 21 U.S.C. § 844(a).

Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Conviction and Sentence (Document No. 88) at 17.

This ineffectiveness claim fails as a matter of law.  While Orji is correct that he could have been charged with the exportation of cocaine, the offense with which he was charged and found guilty, possession with intent to distribute was also supported by the evidence.  In particular, there

was evidence that Orji possessed more than five kilograms of cocaine, and evidence that he intended to distribute it.  There was no allegation made in the indictment that Orji intended to distribute the cocaine in the United States, and 21 U.S.C. § 841(a)(1) does not state where the distribution is to take place.  Moreover, in *United States v. Holler*, 411 F.3d 1061, 1065 (9th Cir.), *cert. denied*, 546 U.S. 996 (2005), the Ninth Circuit clearly held that where " the criminal acts are committed in the United States, the fact that the defendant intends to distribute contraband outside of the United States does not divest [the] court of jurisdiction."

Because the challenge to the Indictment Orji argues should have been made by counsel was not viable, this ineffectiveness claim also fails.

**5.     Sequestration of witnesses**

Orji next claims that counsel was ineffective for failing to sequester the defense's witnesses.  Orji alleges in this regard as follows:

> Counsels' failure to sequester Petitioner's witnesses, thus causing this Court to exclude them from testifying in Petitioner's behalf, caused Petitioner his valuable witnesses, and caused him the opportunity to give the jury the face they needed to consider the existence of Mr. Ogugua, prejudiced Petitioner.

Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Conviction and Sentence (Document No. 88) at 18.

In this regard, the record shows that the Court excluded one of the defense's witnesses on the basis that he was present in the courtroom, after the Rule had been invoked.  *See* Trial Transcript (Document No. 80) at 121-122.  At the time of that exclusion, the Court mentioned that inquiry had previously been made as to whether any defense witnesses remained in the courtroom.  *Id.* at 122. Defense counsel, in acknowledging that the witness had been present in

19

the courtroom after the Rule had been invoked, stated that the witness would only have testified "as to custom, nothing more." Transcript (Document No. 80) at 122.[2]

Here, upon this record where the excluded witnesses would have testified "as to custom, nothing more," testimony which was provided by at least three other defense witnesses, it cannot be said that the exclusion of this witness had any effect on the trial. As such, regardless of whether the witness' exclusion could be attributable to any action or inaction on the part of counsel, Orji was not prejudiced within the meaning of *Strickland*. No relief is therefore available to Orji on this ineffectiveness claim.

### 6.      Motion to Exclude Evidence

---

[2] The following exchange took place on the record:

Mr. Hippard: Your Honor, this is one of those individuals that was standing in the back of the courtroom that heard the entire testimony of Joseph Amadasu who testified about the subject matter that is being testified to right now. And we were under the rule, and this man sat here and listened to the whole entire testimony of Mr. Amadasu.

The Court: Was he in the courtroom then?

Mr. Mgbaraho: Yes, yes.

The Court: All right. Well, those persons who were in the courtroom indicated to me they were not to be witnesses so he will not be allowed to testify.

Mr. Mgbaraho: Okay, Your Honor. The only problem, Your Honor, is that he heard the agents testify. He is only going to testify as to custom, nothing more.

The Court: Well, he was under the rule and you were instructed not to have your witness in the courtroom. And then when it was brought to my attention, I made direct inquiry and was – and he gave no indication that he was going to be a witness so he cannot testify now. He's been already in violation of the rule.

Trial Transcript (Document No. 80) at 121-122.

In his final ineffectiveness claim, Orji contends that his counsel was ineffective for failing to exclude evidence of Orji's prior trips to London and Nigeria.  Orji argues as follows:

> At trial, the prosecutor admitted the evidence of Petitioner's other trips to England, and posited to the jury that in those earlier trips, Petitioner had, like the trip in question, checked in baggage that were similar to the ones in the case at bar. The whole idea was to get the jury to see that Petitioner had once or twice carried drugs from the United States to England in the same fashion that the case at bar was charged.  The theory of the government's case was that Petitioner would carry cocaine from the United States to be sent to the United Kingdom to be distributed.  It should particularly be noted that neither the theory nor the evidence showed that Petitioner ever carried cocaine from the United States to Nigeria.  The crux of the government's theory was that the cocaine was destined to the United Kingdom.
>
> In arguing to the jury that Petitioner had on other occasions carried luggage laden with cocaine to the United Kingdom, the jury is convinced that Petitioner was therefore, again carrying the luggage to the United Kingdom to be dropped off for the cocaine sale in the United Kingdom.  Since this was the theory of the government's case, it would have been very important for counsel to point out that the evidence of Petitioner traveling to England in the past with suitcases could not have been the same as the facts at bar because the weight of the luggage that Petitioner had carried from the United States to [the] United Kingdom en route to Nigeria would have shown that Petitioner did not, and could not have dropped off anything in England as the weight of the luggage had been the same from the United States unto the plane en route to Nigeria, as evidenced by the ticket tags Petitioner had from his earlier trips to Nigeria via the United Kingdom.  This would have been a good reason for a motion in limine to exclude any such evidence of Petitioner's trips to England prior to the incident at bar.

Supplemental Submission to § 2255 Motion (Document No. 95) at 3-4.

The record shows that defense counsel, from the outset of the trial, including his opening statement, mentioned Orji's frequent trips to Nigeria.  That was, evidently, part of defense counsel's strategy – to show that Orji, as an attorney and a business man with both business and family ties to Nigeria, traveled frequently to Nigeria for legitimate purposes.  That strategy, in the context of all the evidence, was not objectively unreasonable.

Moreover, despite Orji's after-the-fact assessment that his frequent trips to London should have been excluded, Orji has set forth no viable basis for such exclusion.  In particular, while Orji cites to Rule 403 as a basis for exclusion of the evidence, Orji has not shown that the relevance of those frequent travel to Nigeria was substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waster of time, or needless presentation of cumulative evidence."  FED. R. EVID. 403.  As such, Orji's ineffectiveness claim is essentially conclusory, and cannot provide the basis for any relief in this  § 2255 proceeding.

## B.    Prosecutorial Misconduct Claim

In the last claim, Orji maintains that the following comments and argument made by the prosecutor during his closing argument were improper:

> How about this Sammy guy?  "Sammy gave it to me."  He didn't tell him that.  He didn't tell him Sammy gave it to him.  And he said he had names, addresses, phone number.  He didn't tell him.  He could have.  He had the opportunity.  You know, you also look at some of the other things.  Just the very fact that they were looking at this particular flight going to London, back in the . . . in the two months before they caught six people doing the same thing.

> They caught six people carrying cocaine not into the United States but out.  We're now a source city.  It's not something to be proud of.  It's something we have to stop.  We have to stop it through the system here now, today.  As soon as you can, it has to stop.

> We cannot be a source city for anybody else.  We don't want it here.  It is here whether we want it or not.  We are supplying it to the world.  We have to stop it.  Mr. Orji did it.  Mr. Orji knew it.  Mr. Orji had reasons to be less than truthful on the stand.

> And if you notice, everybody's a liar but him.  Nobody . . . nobody who took that stand had any reason to be anything other than extremely truthful with you with the exception of one man in this room.

22

Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Conviction and Sentence (Document No. 88) at 7.  According to Orji, there was no evidence introduced at trial to support the prosecutor's statements, and such statements, particularly those that urged the jury to "do their civic duty and stop people from exporting cocaine to the rest of the world so that the United States would not become a source country," *id.* at 8, were inflammatory and prejudicial.

Orji did not raise this claim in his direct appeal.  The Government argues in its Motion to Dismiss that the claim is procedurally barred from review.

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors.  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his

23

procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992).  Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'").

Here, the record clearly shows that Orji did not raise this claim in his direct appeal.[3]  In addition, Orji has not made the requisite showing of cause and prejudice to overcome the procedural default of this claim.  As for Orji's protestations at trial, and to a lesser extent herein, that he is actually innocent, Orji has not provided the Court with any evidence or argument that was not already presented to and rejected by the jury.  Therefore, because Orji has not overcome the procedural default of his prosecutorial misconduct claim, the claim is subject to dismissal.

Even if the claim were not procedurally defaulted, no relief would be available to Orji on the merits of the claim.  Despite Orji's argument to the contrary, there was evidence introduced at trial, through the testimony of Agent John Torres, that Houston was considered a source city for narcotics. *See* Trial Transcript (Document No. 80) at 65.  In addition, Joseph Amadasu testified that there had been six seizures of drugs destined for outbound flights at Intercontinental Airport in the past three months.  Trial Transcript (Document No. 79) at 109.  Because there was evidence in the record that supported the arguments of the prosecutor as to Houston becoming a "source city" and because the prosecutor's plea to the jury to do their "civic duty" was not improper, *United States v. Fields*, 72

---

[3] The only claim raised on direct appeal was that the Court erred in submitting a deliberate ignorance instruction to the jury.

F.3d 1200, 1208 (5th Cir.) ("This circuit has held that appeals to the jury to act as the conscience of the community are permissible, so long as they are not intended to inflame."), cert. denied, 519 U.S. 807 (1996), no relief is available to Orji on the merits of this prosecutorial misconduct claim.

## VI.    Conclusion and Recommendation

Based on the foregoing, the Magistrate Judge RECOMMENDS that the Government's Motion to Dismiss (Document No. 96) be GRANTED, that Michael Orji-Nwosu's § 2255 Motion to Vacate, Set Aside or Correct Sentence and Supplemental Motion (Document Nos. 87 & 95) be DENIED, and that this § 2255 proceeding be DISMISSED WITH PREJUDICE..

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 15th day of February, 2011.

Frances H. Stacy
United States Magistrate Judge